## UNITED STATES DISTRICT COURT  FOR THE
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ANTHONY LANDRENEAU AND** | § | **CIVIL ACTION NO:** |
| **LEAH LANDRENEAU** | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **FOREST RIVER, INC.** | § | |
| | § | |
| *Defendant* | § | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I.    Parties

1.      Plaintiff, **ANTHONY LANDRENEAU**, now and has been at all times material hereto resident of the State of Texas.

2.      Plaintiff, **LEAH LANDRENEAU**, now and has been at all times material hereto resident of the State of Texas.

3.      Defendant, **FOREST RIVER, INC.**, hereinafter "FOREST RIVER" is an Indiana corporation with its principle place of business in Elkhart, Indiana.  Forest River is a wholly owned subsidiary of Berkshire Hathaway, Inc., a publicly traded company.  Berkshire Hathaway, Inc., owns more than 10% of the stock of Forest River.

Forest River is authorized to do and is doing business in the state of Louisiana, whose agent for service of process is Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA 70802.

## II.   Jurisdiction

4.      This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs, ANTHONY LANDRENEAU and LEAH LANDRENEAU, and Defendant, FOREST RIVER, are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that she form part of the same case or controversy under Article 3 of the United States Constitution.

## III.   Venue

5.      Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant, FOREST RIVER, is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV.   Conditions Precedent

6.      All conditions precedents have been performed or have occurred.

## V.   Facts

### A.   The Transaction

7.      On April 10, 2015, Plaintiffs purchased a new 2015 FOREST RIVER BERKSHIRE XL , bearing VIN 4UZAB2DT3FCGR8513, hereinafter "BERKSHIRE XL". The BERKSHIRE XL was purchased primarily for Plaintiffs' personal use.  The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

8.      The sales price of the BERKSHIRE XL was $180,737.64, excluding finance charges. Plaintiffs made a down payment in the amount of $5,000.00. The total cost of the vehicle to Plaintiff including finance charges will be over $75,000.00.

### B.   Implied Warranties

9.      As a result of the sale of the BERKSHIRE XL by Defendant to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the BERKSHIRE XL would pass without objection in the trade under the contract description; and that the BERKSHIRE XL was fit for the ordinary purpose for which such motor vehicles are purchased.

10.     Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant.  Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.   Express Warranties

11.     In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the BERKSHIRE XL occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the BERKSHIRE XL had, in fact, repaired the defects.

12.     Plaintiffs' purchase of the BERKSHIRE XL was  accompanied by express warranties offered by Defendant, FOREST RIVER, and extending to Plaintiffs.  These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the BERKSHIRE XL.

13.     The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship.  Any required adjustments would also be

made during the basic coverage period.  All warranty repairs and adjustments, including parts and

labor, were to be made at no charge.  Additional warranties were set forth in FOREST RIVER's

warranty booklet and owners manual.

### D.    Actionable Conduct

14.    In fact, when delivered, the BERKSHIRE XL was defective in materials and

workmanship, with such defects being discovered within the warranty periods.  Many defective

conditions have occurred since purchase, including, but not limited to: those described below in

Plaintiff's own words:

> The problems started immediately after our purchase as we headed home
> for our 6 hour drive. There was/is a knock in the wall on the driver's side
> window next to the driver. I could not stop the knocking as it was between
> the walls of the coach. After that, we had problems with the hot water
> heater not working. I called Motor Home Specialties to discuss the problem
> and I was told to call the manufacture of the heater to get help. After
> changing three different parts I was able to get it to work but then that
> exposed another issue. The plumbing behind the heater had a leak. I was
> unable to fix the leak myself and we were leaving for a week long vacation.
> I placed a plastic bowl under the leak and had to turn the water on and off
> every time we used hot water. Once we were on vacation we noticed the
> coach would not cool off.  Remember it took two months to get the water
> heater working so we had not been using the coach. The outside
> temperature was running around 95 degrees and the inside temperature of
> the coach was 88 degrees. I noticed that there was limited airflow out the
> vents and also had a rattling noise in the vent. We had to send our kids to
> sleep with friends that had traveled with us and my wife and I would sleep
> with fans. During this time while on vacation, I called you to discuss some
> of the issues with the coach, mostly the not cooling off part. When I
> returned from vacation I scheduled an appointment with Southern RV, a
> Forest River dealer close to my area. The coach was in the shop for over 5
> weeks. At no fault of yours the service was horrible and the issues where
> only partly repaired, but the A/C was not repaired at all.
>
> After battling through the football season with all the issues, especially the
> A/C problems, I was able to schedule an appointment with Motor Home
> Specialties. I delivered the coach to their location on

February 13, 2016 and picked it up May 28, 2016, 15 weeks later. Again the service is not your fault but was horrible and issues are not completely fixed on the coach. The AC was changed and I was very happy for that thinking the coach would finally cool. Once I left with the coach heading home for a 6 hour drive, I noticed it still would not cool off. When I arrived home it was cloudy and raining with an outside temperature around 83 degrees but the inside temperature was 78 degrees. I climbed on the coach and removed the A/C cover to discover the A/C unit froze up again. I have attached pictures. I call Motor Home Specialties and was directed to a Domestic dealer in my area. I brought the coach to United RV and their repairman changed a sensor on the unit. The output in the coach was checked and found to have the right temperature coming out the unit but he thought the air flow was not as it should be. They are not a Forest River dealer so he would not look at anything else but the Dometic unit itself.

Once I returned home I plugged the coach in and ran it for a couple days with the slides out and both units running. The coach would not cool off during the day and at night would get down to mid to lower 70s while the outside temperature was 77 degrees.   I decided to remove all the vents to try and inspect the duct work. After using a small light, mirror and camera I was able to inspect and take pictures of the duct work. I discovered that there is lose plastic in the ducts which is blocking the inlet from the A/C to the duct. Also it appears that the inlets to the duct from the A/C are too small and not cut out properly to allow enough airflow into the duct.  When the units are running the air is blowing against the plastic or getting under the lose plastic not allowing enough airflow in the coach to cool the coach. Three of the vents have minimal to no air flow. This appears to be a manufacture issue and I am not sure how this would be fixed.

The above issues are just a few that I have had but were/are significant.  I have attached a list of all the issues with the coach since the purchase. I have also attached some pictures of the ducts, A/C, and the motor from the slide. The list is long and still has issues that need addressing.

In summary, I have had this coach for 61 weeks and 28 weeks of that not being used, 20 in the shop trying to repair issues at no fault of mine and an additional 8 weeks because of the hot water heater problems. . As I stated earlier we purchased the coach for vacation, weekend travels and LSU tailgating and with its current issues we cannot use it as it was intended. I am asking you to help get the coach fixed but at the same time take in to consideration  I cannot be without a coach as I spend thousands of dollars planning trips ahead of time and paying for tickets for tailgating.  We have had a vacation planned to the Grand Canyon for a year now and we leave

-5-

in 10 days. I am in the process of locating cabins or Hotels close enough to the camp ground in case it is too hot to sleep in the coach. We also have a trip planned and campground booked in Wisconsin for the LSU game the first week of September. Just a few examples of how we use the coach and the dollars already spent.

15.     Since purchase, Plaintiffs have returned their BERKSHIRE XL to Defendant and authorized warranty service dealers for repairs on numerous occasions.  Despite this prolonged period during which Defendant was given the opportunity to repair the BERKSHIRE XL, the more significant and dangerous conditions were not repaired.  Defendant failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein.  From the date of its purchase, the BERKSHIRE XL continues to this day to exhibit some or all of the non-conformities described herein.

16.     The defects experienced by Plaintiffs with the BERKSHIRE XL substantially impaired its use, value and safety.

17.     Plaintiffs directly notified the Defendant of the defective conditions of the BERKSHIRE XL numerous occasions.  Plaintiffs notified Defendant that they wanted a rescission of the sale of the BERKSHIRE XL but Defendant have failed and refused to buy back Plaintiffs' defective BERKSHIRE XL.

## VI.    Causes of Action

## COUNT 1:  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

18.     Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

19.     Plaintiffs are the  "consumer" as defined in the DTPA.

20.    Defendant violated the following provisions of the DTPA:

a.     §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs;

b.     §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiffs were deprived of substantial value of bargain because the defect was not corrected within reasonable time);

c.     §17.50(2):  breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 354 (Tex. 1987);

d.     §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

e.     §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

21.    Because of the inherent defects in the BERKSHIRE XL, which defects existed at the time the automobile was sold although not discovered until later, the automobile was not merchantable in that it would not pass without objection in the trade under the contract description and it was not fit for the ordinary purpose for which such automobiles are used.  Furthermore, Defendant, FOREST RIVER, failed to perform the repair work in a good and workmanlike manner. This conduct by Defendant, FOREST RIVER, constitutes a breach of the implied warranties described above, which breach is actionable under DTPA § 17.50(a)(2).

22.     When the BERKSHIRE XL was not repaired, the express warranties that it would be and had been repaired were breached. Defendant, FOREST RIVER's breach of the express warranties is actionable under DTPA § 17.50(a)(2).

23.     Defendant's, FOREST RIVER, statements that the BERKSHIRE XL's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendant's services.  For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

24.     The Defendant's acts or practices in the selling and/or repairing of the BERKSHIRE XL to Plaintiffs were unconscionable actions or courses of action because they tool advantage of the Plaintiffs' lack of knowledge, ability, experience, or capacity of the Plaintiffs to a grossly unfair degree.  For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

25.     Plaintiffs further contend that Defendant's violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiffs to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

26.     This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

27.     The limited remedy in Defendant's warranty fails of its essential purpose and deprives Plaintiffs of the substantial value of the bargain because Defendant or its authorized dealerships did not correct the defects within a reasonable time.  Tex. Bus. and Com. Code § 2.719.  Therefore, any purported limitation of remedies is ineffective.

-8-

28.     The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

29.     This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

30.     As a direct and proximate result of Defendant's willful violation of their obligations under the DTPA, Plaintiffs suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the BERKSHIRE XL, damages associated with the inconvenience suffered as a result of the complete failure of the BERKSHIRE XL to operate properly, the loss of use of the BERKSHIRE XL during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, and attorneys' fees.  Plaintiffs incurred and will continue to incur in order to protect their rights in this matter.  The precise amount of damages is unknown at the present time but is estimated to be in excess of $75,000.00 and will be shown according to proof at trial.  Attorneys' fees, loss of use, interest, and other damages continue to accrue.

31.     Under the DTPA, Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails.  As a proximate result of Defendant's misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs incurred and continues to incur legal fees, costs and expenses in connection there with. mag

## COUNT 3:    BREACH OF EXPRESS WARRANTIES

32.    Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

33.    The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs' BERKSHIRE XL or those similarly situated were free from inherent risk of failure or latent defects.  In addition, the Defendant issued an expressed written warranty which covered the BERKSHIRE XL and warranted that the BERKSHIRE XL was free of defects in materials and work quality at the time of delivery.

34.    As alleged above, the Defendant breached its warranties by offering for sale, and selling as safe to Plaintiffs, an BERKSHIRE XL that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

35.    In breach of the foregoing warranties, the Defendant has  failed to correct said defects.

36.    The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 4:    BREACH OF IMPLIED WARRANTIES

37.    Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

38.    The Defendant impliedly warranted that Plaintiffs' BERKSHIRE XL, which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

39.     Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant is unreasonable and unconscionable and void under the principles of estoppel, because Defendant knew the defects existed and might not be discovered, if at all, until the BERKSHIRE XL had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiffs.

40.     Because of the defects, Plaintiffs' BERKSHIRE XL is unsafe and unfit for use and has caused economic loss to the Plaintiffs.  Therefore, the Defendant breached the implied warranty of merchantability.

41.     The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 5:    NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

42.     The Defendant had a duty to Plaintiffs to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiffs and correct products which are defective.

43.     The Defendant breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiffs by the following acts and omissions:

     a.     Failure to design and manufacture a BERKSHIRE XL that did not harbor the defects alleged herein;

     b.     Failure to notify Plaintiffs of the dangerous and defective condition of the BERKSHIRE XL when Defendant knew or should have known of the dangerous and defective condition;

c.   Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

d.   Failure to repair the BERKSHIRE XL in accordance with the express and implied warranties.

44.   The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 6:   BREACH OF CONTRACT

45.   Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

46.   Plaintiffs would show that the actions and/or omissions of Defendant described herein above constitute breach of contract, which proximately caused the direct and consequential damages to Plaintiffs described herein below, and for which Plaintiffs  hereby sues.

47.   The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 7:   NEGLIGENT REPAIR

48.   Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.  For purposes of this cause of action, the word  "Defendant" refers to FOREST RIVER.

-12-

49.    On numerous occasions, Plaintiffs delivered the BERKSHIRE XL to FOREST RIVER through it's authorized dealer for repairs of the defective conditions covered under the express and implied warranties set forth herein above.

50.    On each occasion that Plaintiffs returned the BERKSHIRE XL for repairs, Plaintiffs are informed and believe, and thereupon allege, that Defendant, FOREST RIVER, attempted repairs of the BERKSHIRE XL pursuant to their obligations under the express and implied warranties. Defendant owed a duty of care to Plaintiffs to perform repairs on the BERKSHIRE XL in a good and workmanlike manner within a reasonable time.  These Defendant breached this duty.

51.    Defendant's attempted repairs of Plaintiffs' BERKSHIRE XL were done so negligently, carelessly, and recklessly as to substantially impair the BERKSHIRE XL's use, value, and safety in its operation and use.  At no repair attempt was Plaintiff's BERKSHIRE XL fully and completely repaired by Defendant, nor were many of the conditions of which Plaintiffs complained fixed or significantly improved by Defendant's attempts at repair.  Nonetheless, each time Plaintiffs picked up the vehicle after Defendant's repair attempts, Defendant represented to Plaintiffs that the repairs were complete, and Plaintiffs relied thereon.

52.    As a direct and proximate result of Defendant's negligent failure to repair the BERKSHIRE XL within a reasonable time or within a reasonable number of attempts, Plaintiffs was forced to drive a defective and dangerous BERKSHIRE XL in conducting their daily activities.  As a further direct and proximate result of Defendant's failure to repair the BERKSHIRE XL in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the BERKSHIRE XL in for further repair attempts and to leave the BERKSHIRE XL for long periods of time at great inconvenience to themselves, and Plaintiffs sustained actual damages.

-13-

53.     The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiff's health and well-being in the form of emotional distress.

## VII.     Economic and Actual Damages

54.     Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

      a..     Out-of-pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

      b.     Loss of use;

      c.     Loss of the "benefit of the bargain";

      d.     Diminished or reduced market value; and

      e.     Costs of repairs.

## VIII.   Damages for Mental Anguish

55.     Plaintiffs would further show false, misleading and deceptive acts, practices and/or omissions described herein above were committed "knowingly," as provided by Section 17.45(9) of the Texas Business and Commerce Code, in that Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

56.     As a result of such acts, practices and /or omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce

Code, and for which Plaintiffs hereby sues in an amount in excess of the minimum jurisdictional limits of this Court.

## IX.    Multiple Damages

57.    The Defendant's conduct in violation of the DTPA was committed knowingly, as that term is defined in that Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

58.    Plaintiffs further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendant specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

59.    Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of their economic damages.

## X.    Request for Rescission

60.    Plaintiffs seek a damages remedy as an alternative to the remedy of rescission which is requested in the following paragraph.

61.    Plaintiffs revoke their acceptance of the BERKSHIRE XL for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiff's reasonable reliance on the false representations and warranties of Defendant that the defects in the BERKSHIRE XL would be repaired.  Accordingly, Plaintiffs seek a cancellation of the automobile  purchase transaction and an order of the court restoring to them the money obtained by Defendant as a result of the false representations and breaches of warranty set forth above.  Plaintiffs also seek cancellation of the debt and now offers to return the automobile to Defendant.  In this connection,

Plaintiffs will provide Defendant a credit for the impaired use of the BERKSHIRE XL, for the time that Plaintiffs was able to use it.

## XI.    Attorney Fees and Costs

62.      Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XII.    Prayer

63.      For these reasons, Plaintiffs pray for judgment against the Defendant, FOREST RIVER, INC.,  for the following:

      a.      For general, special and actual damages according to proof at trial;

      b.      Rescinding the sale of the VEHICLE WITH VIN NO 4UZAB2DT3FCER8513 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

      c.      For incidental and consequential damages according to proof at trial;

      d.      Out-of-pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

      e.      Any diminution in value of the BERKSHIRE XL attributable to the defects;

      f.      Past and future economic losses;

      g.      Prejudgment and post-judgment interest;

      h.      Damages for loss of use of vehicle;

I.      Civil Penalties and/or Punitive damages;

j.      Damages for mental anguish;

k.      Attorney fees;

l.      Costs of suit, expert fees and litigation expenses; and

m       All other relief this Honorable Court deems appropriate.

### XIII.    Demand for Jury Trial

64.    Plaintiffs hereby demand trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
1343 West Causeway Approach
Mandeville, Louisiana 70471
E-mail: rick@rickdaltonlaw.com
Tel. (985) 778-2215
Fax: (985) 778-2233

ATTORNEY FOR PLAINTIFFS